IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MILTON PURCELL,** | : | CIVIL ACTION NO. 1:07-CV-1857 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **OLIVER EWING,** | : | |
| Defendant | : | |

**MEMORANDUM**

This is a diversity action in which plaintiff Milton Purcell ("Purcell") advances a defamation claim against defendant Oliver Ewing ("Ewing") arising from comments Ewing posted on a publicly accessible online message board. Ewing has moved to dismiss the complaint on the ground that the statements upon which Purcell rests his case fail to constitute defamation as a matter of law. For the reasons the follow, the motion will be granted.

**I.   Statement of Facts**[1]

Purcell is an alumnus of the Milton Hershey School ("MHS"), located in Hershey, Pennsylvania. (Doc. 1, Ex. A ¶ 7.) MHS is a private institution that operates elementary, middle, and high schools for children of families with limited

---

[1]In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint. See infra Part II. The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

financial means.[2]  The Milton Hershey School Alumni Association ("the Alumni Association") operates alongside MHS to maintain an alumni network and organize alumni activities.[3]  Purcell actively participates in Alumni Association activities. (Id. ¶ 7.)  Whether he holds a leadership post within the organization is unclear from the complaint.

Beginning in September 2006, Ewing allegedly posted several derogatory comments about Purcell using the alias "prosecute" on a publicly accessible internet forum containing civic and news information about the central Pennsylvania region, where Purcell lives.  (Id. ¶¶ 4, 10.)  The first posting occurred on September 21, 2006 and referenced a photograph of Purcell that appeared in an MHS homecoming brochure distributed by the Alumni Association:

> Look at the pictures.
> By prosecute, 9/21/06 22:49ET
>
> If one looks at the photos in the homecoming flyer, two of the candidates look to me like photos that you would see for someone accused of child molestation.  Look at Bill Brill and Milt Purcell, those are the type of perverts to look out for.  Then look at Brad's photo with the Rent a Model on this web page.  Enough said.

(Id. ¶¶ 10, 11.)

---

[2]See Milton Hershey School, Mission & Vision, http://www.mhs-pa.org/about/mhs-mission-vision/ (last visited April 28, 2008).

[3]See Milton Hershey School Alumni Association, About MHSAA, http://www.mhsaa.org/about.asp (last visited April 28, 2008).  Information about MSH and the Alumni Association does not appear in Purcell's complaint.  The court has provided it solely for the purpose of describing the factual background against which Purcell's claims arise.

A second posting appeared ten months later on July 17, 2007:

What does Purcell do??
By prosecute, 7/17/07 15:50ET

His is on no committees, he does nothing.  How can someone like him has [sic] a full time criminal defense attorney on his payroll?  The ansewer [sic] is easy, "when you have the money, you can bully whom ever [sic] you want and your criminal defense attorney will bail you out!  Ain't that right Milt?"  "Yes sir you are correct!" says Milt.  Too bad Dick is not around to kick little brothers [sic] butt!  Moron.

(Id. ¶ 14).

Ewing allegedly posted the final comment approximately two weeks later, on July 30, 2007:

They must really be in fear
By prosecute, 7/30/07 22:51ET

They never post the minutes to all the board meetings held, they will not post the candidates running for the board of directors this year. And Brill still looks like a child molester.  Just look at last years [sic] picture of him when he ran for a position on the board.  And tell me what the hell does Purcell do?  He is on no committees and has a barn named after his family.  Maybe that is where he belongs, in the barn. Perverts and bullies is [sic] all they are.  Oh my, did I say pervert (:<).

(Id. ¶ 16.)

Purcell commenced the instant action on September 4, 2007 in the Dauphin County Court of Common Pleas, alleging that Ewing's remarks constitute defamation.  Ewing removed the action to federal court and filed a motion to dismiss on the grounds that the postings express only opinions and lack any defamatory meaning that would affect Purcell's reputation.  The parties have fully briefed the motion, which is now ripe for disposition.

**II.     Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting Erickson v. Pardus, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499

4

F.3d 227, 234 (3d Cir. 2007). Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Montville Twp. v. Woodmont Builders LLC, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting Twombly, --- U.S. at ---, 127 S. Ct. at 1969). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### III. Discussion

To establish a prima facie claim of defamation under Pennsylvania law, a plaintiff must prove that: (1) the communication was defamatory in nature, (2) the communication was published by the defendant, (3) the communication applied to the plaintiff, (4) the recipient of the communication understood its defamatory meaning and its application to the plaintiff, and (5) the plaintiff suffered special harm as a result of the communication's publication. 42 PA. CONS. STAT. § 8343(a); see also Zugarek v. S. Tioga Sch. Dist., 214 F. Supp. 2d 468, 480 (M.D. Pa. 2002). Ewing's motion seeks dismissal on the sole ground that his online postings were not defamatory in nature.

The court must determine as a matter of law whether a particular communication is capable of a defamatory meaning. See U.S. Healthcare v. Blue Cross of Greater Phila., 898 F.2d 914, 923 (3d Cir. 1990); 12th St. Gym, Inc. v. Gen.

Star Indem. Co., 93 F.3d 1158, 1163 (3d Cir. 1996).  "A communication is considered defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  See Goralski v. Pizzimenti, 540 A.2d 595, 597-98 (Pa. Commw. Ct. 1988); see also 12th St. Gym, 93 F.3d at 1163.  Words that are merely annoying, embarrassing, or uncouth do not qualify as defamatory.  See Beverly Enters. v. Trump, 182 F.3d 183, 187 (3d Cir. 1999); Marier v. Lance, Inc., No. Civ. A. 06-1298, 2007 WL 3120263, at *4 (W.D. Pa. Oct. 23, 2007).  "A certain amount of vulgar name-calling is frequently resorted to by angry people without any real intent to make a defamatory assertion, and it is properly understood by reasonable listeners to amount to nothing more.  This is true particularly when it is obvious that the speaker has lost his temper and is merely giving vent to insult."  Beverly Enters., 182 F.3d at 188 (quoting RESTATEMENT (SECOND) OF TORTS § 566 cmt. e (1977) [hereinafter "RESTMT TORTS"]).  The determinative factor in this analysis is the "way in which the communication would have been interpreted by the reasonable, average person in its intended audience."  Karl v. Donaldson, Lufkin & Jenrette Sec. Corp., 78 F. Supp. 2d 393, 397 (E.D. Pa. 1999).  Hence, a defamation plaintiff may not recover for flippant or abrasive remarks if they would not affect the plaintiff's reputation "in the minds of average persons among whom [they were] intended to circulate."  Maier v. Maretti, 671 A.2d 701, 704 (Pa. Super. Ct. 1995); accord Tucker v. Fischbein, 237 F.3d 275, 282 (3d Cir. 2001).

"Superimposed upon these considerations are the Pennsylvania courts' recognition that 'statements of opinion, without more, are not actionable.'" Levenson v. Oxford Global Res., Inc., No. , 2007 WL 4370911, at *5 (W.D. Pa. Dec. 11, 2007) (quoting Green v. Mizner, 692 A.2d 169, 174 (Pa. Super. Ct. 1997)). Despite this general rule, an opinion that could reasonably be understood to imply undisclosed defamatory facts may support a cause of action based upon those unenumerated facts. See Remick v. Manfredy, 238 F.3d 248, 261 (3d Cir. 2001) (noting that an opinion cannot qualify as defamatory unless is can reasonably be interpreted as imply undisclosed facts of a defamatory nature.) An opinion that could not reasonably be construed as implying such facts will not substantiate a claim. See Cornerstone Sys. v. Knichel Logistics, L.P., 255 F. App'x 660, 665 (3d Cir. 2007) (reiterating that opinions may be defamatory only if the are "reasonably understood as implying . . . undisclosed facts" of a defamatory nature); Ober v. Miller, No. 1:04-CV-1669, 2007 WL 4443256, at *19 (M.D. Pa. Dec. 18, 2007) ("That a statement contains only expressions of the speaker's opinion, rather than statements of fact, is also an absolute defense to a defamation claim."). Bearing these considerations in mind, the court will evaluate each of Ewing's postings to determine whether it supports an action for defamation.

The first posting states that Purcell's photograph "looks to me [(Ewing)] like that" of "someone accused of child molestation" and that Purcell is a "pervert[] to look out for." (Doc. 1, Ex. A ¶ 10.) The remarks are couched exclusively in the language of opinion, suggesting that Purcell "*looks to me* [(Ewing)]" like an

7

individual who had perpetrated a crime. (Id. (emphasis added)). They contain no factual assertions, and they purport to arise from nothing more than Ewing's personal perception of a particular photograph. No reader could reasonably believe that the posting derives from any implied defamatory facts because—by its very terms—it originates exclusively in the mind of Ewing. The title of the posting ("Look at the pictures") and its opening sentence ("If one looks at the photos") invite readers to evaluate the photograph and form their own conclusions. Its closing line ("Enough said") confirms that the posting is a sarcastic expression of Ewing's unflattering opinion rather than a recount of defamatory falsehood. Accordingly, the first online posting is merely a non-actionable statement of opinion about Purcell's appearance in a photograph.[4] The motion to dismiss will be granted with respect to the first posting.[5]

---

[4] The court would be remiss if it did not address the offensive nature of Ewing's posting notwithstanding its status as opinion. Ewing acknowledges that his comments "were, regrettably, rude," (Doc. 5 at 7), and that "an apology might be appropriate," (Doc. 12 at 1). Though the comments are not actionable as defamation, posting of them was more than simply "rude." Child molestation is a pernicious societal problem, and referencing it for the sole purpose of hurling vacuous insults against another is both highly inappropriate and dreadfully immature.

[5] Ewing's first posting also fails to support an action because it lacks defamatory meaning. No reasonable person who read the posting would believe that Purcell had actually committed a criminal act. Rather, he or she would likely empathize with Purcell as a victim of an uncouth and offensive personal attack. The posting would not, however, alter the esteem in which others held Purcell. The cases of Lewis v. North General Hospital, 502 F. Supp. 2d 390 (S.D.N.Y. 2007) and Neshat v. County of San Bernardino, No. E031591, 2003 WL 22674294 (Cal. Ct. App. Nov. 13, 2003) support this conclusion. Lewis involved an African American plaintiff employed as a social worker at the defendant hospital. Lewis, 502 F. Supp.

---

2d at 393. The plaintiff sued the hospital for defamation after two of his coworkers implied that he had committed acts of molestation by referring in his presence to "Michael Jackson" or "some other African man who had molested a child." Id. The court held that these insults were not defamatory because "no reasonable jury could conclude . . . that [they] . . . implied that [the plaintiff] was a child molester." Id. at 399; accord Q-Tone Broad. Co. v. Musicradio of Md., Inc., No. Civ. A. 03C-09-021, 1994 WL 555391, at *6 (Del. Super. Ct. Aug. 22, 1994) (holding that reference to Michael Jackson, uttered in a manner suggesting that plaintiff's employees had committed acts of child molestation was not defamatory because reasonable people would understand it as insult).

  Neshat confirms that mere insults are not defamatory if they have no effect upon the reasonable person's perceptions of the plaintiff. That case involved a claim of defamation brought by an assistant district attorney, a public official under First Amendment defamation doctrine, arising from inappropriate comments made by a public defender against whom she frequently litigated. Neshat, 2003 WL 22674294, at *1. A colleague of the plaintiff participated on her behalf in a telephone conference with the public defender concerning a matter colloquially known as "the pervert case." Id. After the plaintiff's colleague mentioned the plaintiff's name, the public defender allegedly stated "We all know who the biggest pervert is." He also stated that "[the plaintiff] sits on the toilet issuing [her cases] and gets off." Id. Despite the tasteless nature of these comments, the court determined that "[t]he average listener would have simply dismissed [the comments] as [the public defender's] subjective expression of opinion." Id. at *7. Hence, the comments were "not actionable . . . as a matter of law." Id. Purcell has objected to Ewing's citation of Neshat because it is an unpublished California case and is not citable in California. See CAL. R. COURT 8.1115. However, Purcell has not provided any authority restricting this court from discussing Neshat, and the court has addressed it here because it illustrates the importance that reasonable observers' perceptions play in the defamation analysis.

  Like Lewis and Neshat, the instant matter involves sarcastic insults that the reasonable reader would dismiss as empty rhetoric. In light of the sarcastic tone of the posting and its statement that Purcell "look[s] to me like" one who had perpetrated a crime, reasonable people would conclude that the comment was simply a tactless expression of dislike toward Purcell. They would not alter their perceptions of Purcell, resulting in no harm to his reputation. Accordingly, the posting's lack of defamatory meaning provides an appropriate alternate disposition for the instant motion.

9

Ewing's second posting suggests that Purcell has a "full time criminal defense attorney on his payroll" and that he is a "bully" and a "moron." (Doc. 1, Ex. A ¶ 14.) These statements are akin to those that the United States Court of Appeals for the Third Circuit held to lack defamatory meaning in <u>Beverly Enterprises v. Trump</u>. That case involved remarks made at a political rally by the defendant union president to the plaintiff, a vice president of an organization whose employees the union represented. <u>Beverly Enters.</u>, 182 F.3d at 186-87. The union president allegedly accused the plaintiff of being a "criminal" and shouted that "you people at Beverly are all criminals" and that the plaintiff had "devot[ed] [his] entire career to busting unions." <u>Id.</u> The Third Circuit upheld dismissal of the action, concluding that "the reasonable person would recognize [the comments] as merely . . . vituperative outburst[s] which, although undoubtedly offensive, . . . is not actionable in defamation."[6] <u>Id.</u> at 188.

Like the statements in <u>Beverly</u>, Ewing's second posting contains merely caustic insults to which reasonable people would pay little heed. It does not allege specific criminal actions, identify discrete victims, or propound a motive for criminal activity. The title of the posting ("What does Purcell do??") indicates that it is founded on anger rather than upon rational, objective fact. It ends with a

---

[6]The plaintiff also advanced a defamation claim based on the defendant's statement that "I know your kind. You're just part of that World War II generation that danced on the graves of the Jews." <u>Beverly Enters.</u>, 182 F.3d at 187. The Third Circuit upheld dismissal with respect to this remark on the ground that it was not defamatory per se and that the plaintiff had failed to plead special damages as required by Pennsylvania law. <u>Id.</u> at 188.

sarcastic hypothetical query: "'[Y]ou can bully whom ever [sic] you want and your criminal defense attorney will bail you out! Ain't that right Milt?' 'Yes sir you are correct!' says Milt." The tenor of the posting is one of blustering acrimony rather than criminal accusation, and the characterization of Purcell as a "moron" is simply incapable of defamatory meaning in this context of blatant sarcasm. See Dilworth v. Dudley, 75 F.3d 307, 310 (7th Cir. 1996) (summarizing holdings of various cases that concluded that many vacuous insults, such as phony, lazy, stupid, and chicken-stealing idiot, lacked defamatory meaning); Czech v. Gordon, 68 Pa. D. & C. 225, 233 (C.P. Phila. County 2004) (holding that statement identifying plaintiff as an idiot, moron, and incompetent lacked defamatory meaning). The reasonable person would recognize that Ewing penned his comments to "give vent to insult" and to express his personal disapproval of Purcell. Beverly Enters., 182 F.3d at 188 (quoting RESTMT TORTS § 566 cmt. e). The reasonable person would not interpret them as substantive allegations of criminal activity. Hence, the statement would have no effect on Purcell's reputation and cannot support an action for defamation. The motion to dismiss will be granted with respect to the second posting.

The final posting asks "what the hell does Purcell do?," states that "[h]e is on no committees and has a barn named after his family," and suggests that "he belongs[] in the barn." It again insinuates that he is a "pervert" and a "bully." A reasonable reader would interpret this comment in the same manner as the second posting: as an angry, sarcastic outcry against Purcell that derived exclusively from Ewing's emotional dislike. The caustic tone of the posting would lead reasonable

readers to one conclusion:  that Ewing was using the internet forum as an outlet to express personal hostility against Purcell.  They would not rely on the comments as a basis for altering the esteem in which they held Purcell.  The posting therefore would have no adverse effect on Purcell's reputation among reasonable people and fails to constitute defamation.

**IV.   Conclusion**

Reasonable readers of Ewing's comments would understanding them as the unsubstantiated opinions and imprudent tirades of one who harbored intense dislike for Purcell.  They would not alter their perception of Purcell based on Ewing's emotionally charged commentary.  Purcell's failure to allege the existence of any comments capable of supporting a defamation action is fatal to his claim.  Accordingly, leave to amend the complaint will be denied as futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

An appropriate order will issue.

                            S/ Christopher C. Conner
                            CHRISTOPHER C. CONNER
                            United States District Judge

Dated:        May 22, 2008

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MILTON PURCELL,** | : | CIVIL ACTION NO. 1:07-CV-1857 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **OLIVER EWING,** | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 22nd day of May, 2008, upon consideration of defendant's motion to dismiss (Doc. 3) the complaint, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion to dismiss (Doc. 3) is GRANTED. Leave to amend is denied as futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

2. The Clerk of Court is instructed to CLOSE this case.

                                              S/ Christopher C. Conner
                                              CHRISTOPHER C. CONNER
                                              United States District Judge